UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:99-CR-31-GFVT-HAI |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| CHARLES SIZEMORE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On referral from District Judge Van Tatenhove (D.E. 180), the Court considers reported violations of supervised release conditions by Defendant Charles Sizemore.

District Judge Coffman entered Judgment against Defendant in September 1999 after Defendant pleaded guilty to three counts of an eight-count indictment: conspiracy to distribute marijuana, possession with intent to distribute marijuana, and using a firearm in relation to a drug trafficking crime. Defendant was sentenced to 295 months of imprisonment followed by five years of supervised release.[1] According to the BOP website, Defendant was released on April 21, 2020.

## I.

On December 7, 2020, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges two violations. According to the Report,

---

[1] This is an old case, and the judgment and other documents predating 2015 are not in the electronic record.

On January 13, 2021, this officer made contact with Sizemore at his home. He submitted a urine sample for testing which resulted positive for the use of methamphetamine, via instant testing device. When questioned about his drug use, Sizemore admitted to using methamphetamine three times within the previous 30 days, with the most recent use occurring on January 10, 2021. He signed a written admission for such use.

Based on this admission, Violation #1 alleges a violation of the condition that prohibits "any unlawful use of a controlled substance." This is a Grade C violation.

Based on Defendant's use of methamphetamine, Violation #2 charges a violation of the condition prohibiting commission of another federal, state, or local crime and the condition forbidding the illegal possession of a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's methamphetamine use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

The Court conducted an initial appearance pursuant to Rule 32.1 on January 29, 2021, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 183. At the initial appearance, the United States made an oral motion for interim detention; Defendant requested release. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing on February 4, 2021, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 187. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id.* He admitted, as he told his probation officer, that he had used methamphetamine on three occasions prior to the drug test. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as

2

described in the Report.  The United States thus established both violations under the standard of section 3583(e).

## II.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District.  Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction.  Defendant pleaded guilty to (in addition to two drug charges), a Class A firearms charge.  *See* 18 U.S.C. § 924(c)(1)(A).  Such a conviction carries a five-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven.  *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007).  Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violation #1 and a Grade B violation for Violation #2.  Given Defendant's criminal history category of II (the category at the time of the conviction in this District) and Grade B violation,[2] Defendant's range, under the Revocation Table of Chapter Seven, is six to twelve months.  USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation.  *See* 18 U.S.C.

---

[2] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

3

§ 3583(b) & (h).  Due to his drug trafficking convictions, Defendant faces no maximum term of supervised release.  *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

**III.**

At the final hearing, the government requested revocation with twelve months of imprisonment followed by five years of supervised release.  The defense argued for drug-abuse treatment in lieu of revocation or time-served followed by home incarceration.

The government's position was that a strong message must be sent to Defendant that meth use cannot be tolerated.  Focusing on Defendant's criminal history, the government noted that he was part of a large interstate drug trafficking organization.  Defendant admitted responsibility for trafficking one kilogram of cocaine, and other evidence suggested it may have been as much as five kilos.  The marijuana conspiracy involved 1,000 pounds of marijuana.  On top of that, Defendant discharged a firearm as part of the conspiracy.  The PSR recounts the details of Defendant's violent attempt to collect (or retaliate for) a drug debt, as told by the victim:

> [The victim] indicated that Mr. Sizemore began kicking and beating him. Following the kicking and beating, [the victim] was unable to recall the sequence of events; however, he reported Mr. Sizemore pulled out a knife and cut his right hand at the base of the fingers and severely cut his right wrist.  Mr. Sizemore also removed the top portion of [the victim]'s left ear.  [The victim] recalled that Mr. Sizemore slung the contents of a white jug on his back, face, chest, abdomen, and pelvic area.  The contents of the jug, which is believed to be battery acid, caused acute burns over 25% of [the victim]'s total body surface.  After being burned [the victim] recalls Mr. Sizemore shooting him in the left foot and then pulling him to the blue Ford pick-up truck where he shot [the victim] again with a 9mm pistol.  The bullet entered [the victim]'s left side below his arm and lodged in his right side below his right arm.  The bullet remains present in his body.

PSR ¶ 8.  The government argued that "anybody capable of committing that act cannot be on methamphetamine."

The government also pointed to Defendant's history of drug use, including using meth and other drugs during the drug conspiracy. In sum, Defendant's history of drug use and violent behavior "aggravates" the need to protect the public. Although his criminal history (Category II) is not particularly high, the government argued, his violent conduct shows a capacity for disregard of human life. The government expressed concern that people on meth are more likely to engage in erratic and unpredictable behavior, so Defendant needed strong deterrence. Defendant had received drug treatment in prison and during his release period.

The government noted that, to Defendant's credit, he admitted his drug use. However, he only did so *after* the instant test returned a positive result for meth. Defendant had been released less than a year. And now he had used meth, a very hard drug, three times within that period.

The government also discussed how Defendant received a significant upward departure on the underlying sentence. His Guidelines Range was 181 to 211 months, but he received 295 months' imprisonment. This departure was warranted, the government explained, by aggravating facts including the restraint and torture of his victim.

The defense argued that Defendant's behavior could be better corrected by drug treatment or by allowing him to serve his sentence on home confinement. Defendant's sentence was severe, and he has served his time on the original offense. The defense suggested the facts of the underlying crimes from twenty years ago should not weigh heavily now. Defendant, now in his 50s, is a different person. His violent tendencies have been rehabilitated. All he did was fail a drug test.

The defense leaned heavily on Defendant's family ties. The record includes a letter from Defendant's fiancé, along with pictures of Defendant with his her, her child, and other family members. D.E. 186. According to the defense, he has good family support. Defendant also has

living parents whom he "helps to some extent." The defense argued Defendant was having some trouble adjusting to being out of prison after twenty years. Defendant also had enrolled in rehab on his own, showing he was proactively addressing his drug abuse problem. He had a job.

The defense also emphasized Defendant's acceptance of responsibility. He confessed to three uses, when only one use could have been proven. Given all this, the defense argued that treatment along with home incarceration would be sufficient to deter further problems.

Defendant addressed the Court. He said he is trying to make a better life with his girlfriend and her child. He is also trying to build or restore his relationship with his three children and six grandchildren. "I really messed up," he said, "I need some rehabilitation."

## IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted treatment in lieu of revocation under 18 U.S.C. 3583(d). *Crace*, 207 F.3d at 835. Here, defendant has already received drug treatment. He explained to his probation officer that he took meth to keep up with work, which suggests his use was not driven by addiction. The record does not support treatment in lieu of revocation.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court

6

shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

The undersigned recommends a sentence of six months' imprisonment, followed by four years of supervised release. Also recommended is an additional special condition that Defendant refrain from alcohol use.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). As noted by the government, the underlying circumstances here are horrifying. Not only did Defendant participate in a wide-ranging drug conspiracy, but he tortured someone (including shooting them) in the process. As his drug use appears to have spurred his participation in the trafficking conspiracy, any drug use now creates a risk he could return to dangerous trafficking and violence.

The Court next considers Defendant's history and characteristics. Defendant has long had issues with drugs. In his past, his drug abuse has gotten him involved in serious crimes. To his credit, he has now admitted taking three hits of meth and has clearly worked hard to start a new life. He does not seem severely addicted, as he explains he took the meth to help him at work. His probation officer agrees with the defense that Defendant is something of a new man. Defendant needs to be strongly incentivized to remain sober. His criminal history also includes DUI and public intoxication offenses. Thus, the Court recommends an alcohol-abstinence condition be added.

The Court also considers the need to deter criminal conduct and protect the public. These factors weigh heavily. Incarceration is warranted here, as well as a significant term of

supervised release. Whenever Defendant uses an illegal drug, he necessarily has had contact with dealers, which raises the possibility of a return to trafficking.

Another factor focuses on opportunities for education and treatment. Defendant has availed himself of treatment opportunities in the past. And of course, under the existing conditions, he can be referred for additional treatment, if warranted, in the future.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, this is Defendant's first violation and Defendant admitted his drug use. Using three times, however, is a significant breach of trust, particularly given the past link between Defendant's drug use and horrendous criminal behavior. Incarceration is required to address the severity of the breach of trust; home confinement is not adequate to do so.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence. A sentence at the bottom of the Range is appropriate. But Defendant should expect that, if he violates again, the penalty will likely be much higher.

For the reasons discussed herein, the Court finds the recommended sentence is sufficient, but not greater than necessary, to address the pertinent penalty factors.

Based on the foregoing, the Court **RECOMMENDS**:

8

1.    That, upon his stipulation, Defendant be found guilty of both violations.

2.    Revocation with a term of imprisonment of six months.

3.    A term of supervised release of 48 months, under the conditions previously imposed, with the additional special condition requiring Defendant to abstain from alcohol use.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute.  *See also* 18 U.S.C. § 3401(i).  As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.  Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record.  Any waiver should comport with the Court's standard waiver form, available from the Clerk.  Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.  If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 5th day of February, 2021.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**

9