UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | No. 6:99-CR-31-GFVT-HAI |
| v. | ) | |
|  | ) | RECOMMENDED DISPOSITION |
| CHARLES SIZEMORE, | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On referral from District Judge Van Tatenhove (D.E. 197), the Court considers reported violations of supervised release conditions by Defendant Charles Sizemore. This is his second revocation.

**I.**

District Judge Coffman entered Judgment against Defendant in September 1999 after Defendant pleaded guilty to three counts of an eight-count indictment: conspiracy to distribute marijuana, possession with intent to distribute marijuana, and using a firearm in relation to a drug trafficking crime. Defendant was sentenced to 295 months of imprisonment followed by five years of supervised release.[1] Defendant was released on April 21, 2020.

On January 14, 2021, the United States Probation Office ("USPO") reported that, during a home visit, Defendant submitted a urine sample that tested positive for methamphetamine on the instant test. Defendant admitted to using methamphetamine three times within the previous 30 days, with the most recent use occurring on January 10, 2021. He signed a written admission

---

[1] This is an old case, and the judgment and other documents predating 2015 are not in the electronic record.

for such use. Defendant admitted unlawful use of a controlled substance and committing the crime of methamphetamine possession. He was sentenced to six months' imprisonment (the bottom of his Guidelines Range), with four years of supervision to follow and a new condition requiring alcohol abstinence. D.E. 188, 193. The undersigned warned Defendant that he "should expect that, if he violates again, the penalty will likely be much higher." D.E. 188 at 8.

Defendant was released again on July 27, 2021. On September 1, 2021, he was referred for outpatient substance abuse treatment.

On August 26, 2022, the USPO reported that Defendant had violated the condition that requires him to abide by all rules of his substance-abuse treatment program. D.E. 196. According to that "12B" report,

> The defendant was instructed to report to Bouncing Back Counseling in Manchester, Kentucky, on August 24, 2022, to submit a urine sample for testing. Upon arrival staff called this officer and indicated they believed the defendant possessed a device containing urine. The defendant spoke to this officer and denied having such a device. The defendant was instructed to report to the probation office in London, Kentucky, on August 25, 2022, to submit a urine sample for testing. On August 25, 2022, the defendant called this officer and stated he needed to report to work but admitted to the use of methamphetamine and oxycodone. The defendant was instructed to report to the probation office in London, Kentucky, on August 26, 2022.
>
> On August 26, 2022, the defendant reported as instructed and explained several issues that led to his using controlled substances. Sizemore submitted a urine sample which appeared positive for methamphetamine and oxycodone, via instant testing device. The defendant signed a Prob 4-Positive Drug Test Admission Report. The defendant appeared to be sincere about the desire to stop using controlled substances and requested to be placed into an inpatient substance abuse program.

The USPO's 12B requested that Defendant not face revocation, but that his substance-abuse-treatment condition be modified to require inpatient treatment. *Id.* Judge Van Tatenhove

granted that request. *Id*. Defendant completed his 30-day inpatient program on October 5, 2022, and continued outpatient treatment until his arrest on this matter.

## II.

On February 17, 2023, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges three violations. According to the Report, Defendant submitted a urine sample on February 8 that tested positive, on instant testing, for oxycodone and methamphetamine. Defendant admitted using oxycodone but denied using meth. The specimen was sent to Abbott, which confirmed the presence of oxycodone and methamphetamine.

Based on Defendant's use of oxycodone and methamphetamine, Violation #1 alleges a violation of the condition that prohibits "any unlawful use of a controlled substance." This is a Grade C violation.

Based on Defendant's use of oxycodone, Violation #2 charges a violation of the condition prohibiting commission of another federal, state, or local crime and the condition forbidding the illegal possession of a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's oxycodone use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

Based on Defendant's use of methamphetamine, Violation #3 charges a violation of the condition prohibiting commission of another federal, state, or local crime and the condition forbidding the illegal possession of a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #3 is a Grade B violation because Defendant's

methamphetamine use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

Magistrate Judge Stinnett conducted an initial appearance pursuant to Rule 32.1 on March 6, 2023, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 199. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release. Based on the heavy defense burden under 18 U.S.C. § 3143(a), Defendant was remanded to the custody of the United States Marshal. *Id*.

Defense counsel filed in the record a set of letters in support of Defendant. D.E. 201. They are from Defendant's fiancée, her minor son, her mother, and the manager of operations for Defendant's employer, Speyside Bourbon Cooperage in Manchester. Similar filings were made during the 2021 revocation proceedings. D.E. 186.

At the final hearing on March 9, 2023, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 202. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all three violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report. The United States thus established both violations under the standard of section 3583(e).

### III.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty

to (in addition to two drug charges), a Class A firearms charge. *See* 18 U.S.C. § 924(c)(1)(A). Such a conviction carries a five-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violation #1 and a Grade B violation for Violations #2 and #3. Given Defendant's criminal history category of II (the category at the time of the conviction in this District) and Grade B violations,[2] Defendant's range, under the Revocation Table of Chapter Seven, is six to twelve months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Due to his drug trafficking convictions, Defendant faces no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

**IV.**

At the final hearing, the parties presented a jointly recommended incarceration penalty of ten months. The defense requested no further supervised release, but the government recommended an additional four years of supervision.

The government first noted some positive aspects of Defendant. He had taken responsibility by stipulating to the violations. He has been working and contributing to society.

---

[2] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

As shown in the support letters, he is an engaged and proactive step-parent. His criminal history category of II is, by itself, not terrible.

However, this is his second revocation. And the government argued that a need to protect the public still exists because of how Defendant "tortured a man" as part of the underlying criminal activity 24 years ago.

Indeed, as revealed in the PSR, Defendant was part of a large interstate drug trafficking organization in which he trafficked cocaine and marijuana. The PSR recounts the details of Defendant's violent attempt to collect (or retaliate for) a drug debt, as told by the victim:

> [The victim] indicated that Mr. Sizemore began kicking and beating him. Following the kicking and beating, [the victim] was unable to recall the sequence of events; however, he reported Mr. Sizemore pulled out a knife and cut his right hand at the base of the fingers and severely cut his right wrist. Mr. Sizemore also removed the top portion of [the victim]'s left ear. [The victim] recalled that Mr. Sizemore slung the contents of a white jug on his back, face, chest, abdomen, and pelvic area. The contents of the jug, which is believed to be battery acid, caused acute burns over 25% of [the victim]'s total body surface. After being burned [the victim] recalls Mr. Sizemore shooting him in the left foot and then pulling him to the blue Ford pick-up truck where he shot [the victim] again with a 9mm pistol. The bullet entered [the victim]'s left side below his arm and lodged in his right side below his right arm. The bullet remains present in his body.

PSR ¶ 8. The government argued a lingering danger exists for anyone who is capable of such an "extraordinarily violent" act.

The government also discussed how Defendant received a significant upward departure on the underlying sentence. His Guidelines Range was 181 to 211 months, but he received 295 months' imprisonment. This departure was warranted, the government explained, by aggravating facts including the restraint and torture of his victim.

The defense stressed Defendant's good work ethic and family support. Defendant had been successful on release for almost a year and a half. Yet he clearly has drug issues. The

6

defense pointed out that the violent behavior happened almost 25 years ago. Since Defendant's original release from prison in April 2020, he has shown no violent behavior. Given that he is a changed man, the defense argued no further supervision is necessary.

Defendant addressed the Court. He said he is sorry for the pain he has caused his family. He told his fiancée, who was in the courtroom, that, although she says he is a good man, he is truly a "weak man." And he is ashamed for succumbing to drugs again.

## V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted treatment in lieu of revocation under 18 U.S.C. § 3583(d). *Crace*, 207 F.3d at 835. Neither side argued for application of this exception. Defendant received inpatient treatment last fall and he was on outpatient treatment at the time of the violations. The record does not support treatment in lieu of revocation.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

The undersigned recommends adopting the jointly proposed incarceration penalty of ten months. The Court further recommends a two-year period of supervised release on the conditions previously imposed.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). As noted by the government, the underlying circumstances include some horrifying behavior. Not only did Defendant participate in a wide-ranging drug conspiracy, but he tortured someone (including shooting them) in the process. As his drug use appears to have spurred his participation in the trafficking conspiracy, any drug use now creates a risk he could return to dangerous trafficking and violence. Mitigating this danger somewhat is the passage of over two decades' time and the aging of Defendant.

The Court next considers Defendant's history and characteristics. Defendant has long had issues with drugs. In his past, his drug abuse has gotten him involved in serious crimes. This is his second revocation for drug abuse, and his additional use last year resulted in inpatient treatment rather than revocation. Defendant did do well on release for a time, and he has assumed important responsibilities in his life. Defendant has potential.

The Court also considers the need to deter criminal conduct and protect the public. These factors remain relevant. Given his history of drug-driven crime and his repeated relapses, incarceration and further supervision are warranted.

Another factor focuses on opportunities for education and treatment. Defendant has availed himself of treatment opportunities in the past. And of course, under the existing conditions, he can be referred for additional treatment, if warranted, in the future.

The Guidelines suggest that the *primary* wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). This is Defendant's second revocation. Last time, he received a sentence at the bottom of the Guidelines and was warned that future violations would likely receive a "much higher" penalty. Although Defendant tested positive for oxycodone and meth, he denied using meth to his probation officer. At the final hearing, he told the Court that he only knowingly ingested oxycodone. He said he works in a sawmill where other people may be using meth around him. The Court admonished him regarding the prevalence of adulterated and counterfeit drugs. And the Court did not find his denial of meth use credible, given the positive laboratory results. Along with this being his second revocation, his dishonesty also exacerbates his breach of the Court's trust.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence.

For the reasons discussed herein, the Court finds the recommended sentence is sufficient, but not greater than necessary, to address the pertinent penalty factors.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of all three violations.

2. Revocation with a term of imprisonment of ten months.

3.     A term of supervised release of 24 months, under the conditions previously imposed (D.E. 193).

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 13th day of March, 2023.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge