UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:99-CR-31-GFVT-HAI |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| CHARLES SIZEMORE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On referral from District Judge Van Tatenhove (D.E. 212), the Court considers reported violations of supervised release conditions by Defendant Charles Sizemore. This is his third revocation.

**I.**

District Judge Coffman entered Judgment against Defendant in September 1999 after Defendant pleaded guilty to three counts of an eight-count indictment: conspiracy to distribute marijuana, possession with intent to distribute marijuana, and using a firearm in relation to a drug trafficking crime. Defendant was sentenced to 295 months of imprisonment followed by five years of supervised release.[1] Defendant was released on April 21, 2020.

On January 14, 2021, the United States Probation Office ("USPO") reported that, during a home visit, Defendant submitted a urine sample that tested positive for methamphetamine on the instant test. Defendant admitted to using methamphetamine three times within the previous 30 days, with the most recent use occurring on January 10, 2021. He signed a written admission

---

[1] This is an old case, and the judgment and other documents predating 2015 are not in the electronic record.

for such use. Defendant admitted unlawful use of a controlled substance and committing the crime of methamphetamine possession. He was sentenced to six months' imprisonment (the bottom of his Guidelines Range), with four years of supervision to follow and a new condition requiring alcohol abstinence. D.E. 188, 193. The undersigned warned Defendant that he "should expect that, if he violates again, the penalty will likely be much higher." D.E. 188 at 8.

Defendant was released again on July 27, 2021. On September 1, 2021, he was referred for outpatient substance abuse treatment.

On August 26, 2022, the USPO reported that Defendant had violated the condition that requires him to abide by all rules of his substance-abuse treatment program. D.E. 196. According to that "12B" report,

> The defendant was instructed to report to Bouncing Back Counseling in Manchester, Kentucky, on August 24, 2022, to submit a urine sample for testing. Upon arrival staff called this officer and indicated they believed the defendant possessed a device containing urine. The defendant spoke to this officer and denied having such a device. The defendant was instructed to report to the probation office in London, Kentucky, on August 25, 2022, to submit a urine sample for testing. On August 25, 2022, the defendant called this officer and stated he needed to report to work but admitted to the use of methamphetamine and oxycodone. The defendant was instructed to report to the probation office in London, Kentucky, on August 26, 2022.
>
> On August 26, 2022, the defendant reported as instructed and explained several issues that led to his using controlled substances. Sizemore submitted a urine sample which appeared positive for methamphetamine and oxycodone, via instant testing device. The defendant signed a Prob 4-Positive Drug Test Admission Report. The defendant appeared to be sincere about the desire to stop using controlled substances and requested to be placed into an inpatient substance abuse program.

The USPO's 12B requested that Defendant not face revocation, but that his substance-abuse-treatment condition be modified to require inpatient treatment. *Id.* Judge Van Tatenhove

granted that request. *Id*. Defendant completed his 30-day inpatient program on October 5, 2022, and continued outpatient treatment until his arrest on this matter.

On February 17, 2023, the USPO reported that Defendant submitted a urine sample that tested positive, on instant testing, for oxycodone and methamphetamine. Defendant initially admitted using oxycodone but denied using meth. The specimen was sent to Abbott Labs, which confirmed the presence of oxycodone and methamphetamine. Defendant ultimately admitted to unlawful use of a controlled substance and committing the crimes of methamphetamine possession and oxycodone possession. *See* D.E. 203 (R&R).

Defendant's release was revoked, and he was sentenced in March 2023 to ten months of incarceration and 24 months of supervised release. D.E. 205, 206. This was a penalty jointly recommended by the parties, within the six-to-twelve-month Guidelines Range. *See* D.E. 203.

During the 2023 revocation proceedings, Defense counsel filed in the record a set of letters in support of Defendant. D.E. 201. They are from Defendant's fiancée, her minor son, her mother, and the manager of operations for Defendant's employer, Speyside Bourbon Cooperage in Manchester. Similar filings were made during the 2021 revocation proceedings. D.E. 186.

Defendant was released again on December 29, 2023. On January 4, 2024, he was referred for substance abuse treatment at Bouncing Back Counseling in Manchester, Kentucky.

**II.**

On April 15, 2024, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges two violations. According to the Report,

3

>On April 8, 2024, the defendant submitted a urine specimen which appeared to test positively for buprenorphine, fentanyl and methamphetamine, via instant testing device. The defendant is prescribed buprenorphine. The defendant denied the use of any substance other than the prescribed buprenorphine. The specimen was sent to Abbott for confirmation for fentanyl and methamphetamine.
>
>On April 13, 2024, a Drug Test Report was received from Abbott, confirming positive test results for fentanyl and a dilute specimen.
>
>On April 14, 2024, a Drug Test Report was received from Abbott, indicating negative test results for methamphetamine and a dilute specimen.

Based on Defendant's fentanyl use, Violation #1 alleges a violation of the condition that prohibits "any unlawful use of a controlled substance." This is a Grade C violation.

Also based on Defendant's detected fentanyl use, Violation #2 charges a violation of the condition prohibiting commission of another federal, state, or local crime and the condition forbidding the unlawful possession of a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's fentanyl use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

On May 1, 2024, the USPO issued an Addendum to the Report. It charges two additional violations. According to the Addendum,

>On May 1, 2024, this officer spoke with the defendant, via telephone, regarding the urine specimen submitted on April 8, 2024. The defendant was informed the lab confirmed a positive result for fentanyl. The defendant stated he has been using Percocet (oxycodone) and one of the tablets likely contained fentanyl.

Based on this unauthorized use of oxycodone, Violation #3 alleges a Grade C violation of the condition that prohibits "any unlawful use of a controlled substance."

Also based on Defendant's admitted use of oxycodone, Violation #4 charges a violation of the condition prohibiting commission of another federal, state, or local crime and the

condition forbidding the unlawful possession of a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's oxycodone use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

The Court conducted an initial appearance pursuant to Rule 32.1 on July 30, 2024, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 216. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release. Based on the heavy defense burden under 18 U.S.C. § 3143(a), Defendant was remanded to the custody of the United States Marshal. *Id.*

At the final hearing on August 9, 2024, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 218. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all four violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report. He admitted intending to take Percocet. And he did not contest the laboratory analysis indicating fentanyl. The United States thus established all four violations under the standard of section 3583(e).

Additional character letters were filed the day of the final hearing. D.E. 217.

There is also pending in this matter Defendant's motion for a sentence reduction. D.E. 209, 211.

**III.**

The Court has evaluated the entire record, the Report, Addendum and accompanying documents, and the sentencing materials from the underlying Judgment in this District. And the

Court has considered the character letters. Additionally, the Court has considered all the section 3553 factors imported into the § 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to (in addition to two drug charges), a Class A firearms charge. *See* 18 U.S.C. § 924(c)(1)(A). Such a conviction carries a five-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations #1 and #3 and a Grade B violation for Violations #2 and #4. Given Defendant's criminal history category of II (the category at the time of the conviction in this District) and Grade B violations,[2] Defendant's range, under the Revocation Table of Chapter Seven, is six to twelve months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Due to his drug trafficking convictions, Defendant faces no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

---

[2] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

## IV.

At the final hearing, the government requested revocation with eighteen months of imprisonment and no supervision to follow. This would be above the six-to-twelve-month Guidelines Range. The defense requested imprisonment of twelve months and a day (to provide for good-time credit), with no additional supervision. The undersigned recommends revocation with twelve months of imprisonment (not qualified for good-time credit), with no supervision to follow.

The government first noted that Defendant has a "relatively benign" criminal history score of II. But his federal offense was "extraordinarily serious." As the Court noted in the 2023 R&R, Defendant was part of a large interstate drug trafficking organization in which he trafficked cocaine and marijuana. The PSR recounts the details of Defendant's violent attempt to collect (or retaliate for) a drug debt, as told by the victim:

> [The victim] indicated that Mr. Sizemore began kicking and beating him. Following the kicking and beating, [the victim] was unable to recall the sequence of events; however, he reported Mr. Sizemore pulled out a knife and cut his right hand at the base of the fingers and severely cut his right wrist. Mr. Sizemore also removed the top portion of [the victim]'s left ear. [The victim] recalled that Mr. Sizemore slung the contents of a white jug on his back, face, chest, abdomen, and pelvic area. The contents of the jug, which is believed to be battery acid, caused acute burns over 25% of [the victim]'s total body surface. After being burned [the victim] recalls Mr. Sizemore shooting him in the left foot and then pulling him to the blue Ford pick-up truck where he shot [the victim] again with a 9mm pistol. The bullet entered [the victim]'s left side below his arm and lodged in his right side below his right arm. The bullet remains present in his body.

PSR ¶ 8. However, the parties and probation officer agree that Defendant has shown no violent tendencies since his 1999 arrest.

The prosecutor said he initially intended to seek a two-year revocation sentence. The underlying conduct is "striking." Counting the 12B, this is the fourth set of violation conduct. All of them have been for drug use. Efforts at addiction rehabilitation have not been successful.

Also aggravating are the circumstances of Defendant's arrest on the violation warrant. Defendant had constructed a "hide box" in his residence, and he was hiding inside it when the arrest warrant was executed. He was well-concealed, and it took a while to find and retrieve him. However, he did not have a weapon and he did not fight back against the officers. However, aside from this "hide box," Defendant had cooperated well with Probation.

In the other column, the government noted there is no indication Defendant has returned to drug trafficking. The "long shadow" of the underlying offense has run its course. Most significantly, the character letters show Defendant is doing hard manual work. His employer praises his effort and reliability. And he is acting as a father figure to his stepson.

The government recommended no future supervision. First, there is no longer an apparent risk of recidivism in drug trafficking and violence. Second, drug rehab efforts have not been successful, so additional such resources could be better used elsewhere.

The defense stressed Defendant's low criminal history. He supports his family. He is stipulating to the violations. His exemplary work history is "very significant." Defendant also received a significant upward departure on the underlying sentence. His Guidelines Range then was 181 to 211 months, but he received 295 months' imprisonment. The defense said this obviated the need to go above the Range on this revocation. The defense argued that Defendant is not the same person described in the PSR.

Defendant declined to address the Court.

V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted treatment in lieu of revocation under 18 U.S.C. § 3583(d). *Crace*, 207 F.3d at 835. Neither side argued for application of this exception. Defendant received inpatient treatment during the previous supervision period, and has also been in outpatient rehabilitation. The record does not support treatment in lieu of revocation.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). As noted by the government, the underlying circumstances include some horrifying behavior. Not only did Defendant participate in a wide-ranging drug conspiracy, but he tortured someone (including shooting them) in the process. As his drug use appears to have spurred his participation in the trafficking conspiracy, any drug use now creates a risk he could return to dangerous trafficking

9

and violence.  Mitigating this danger somewhat is the passage of over two decades' time and the aging of Defendant.  No one sees him as posing a risk of violence or trafficking at this point.

The Court next considers Defendant's history and characteristics.  Defendant has long had issues with drugs.  In his past, his drug abuse has gotten him involved in serious crimes.  This is his third revocation for drug abuse.  Nevertheless, the letters in support (including letters from his employer and stepson) show that Defendant has made progress, is contributing to society, and has plenty of potential.

The Court also considers the need to deter criminal conduct and protect the public.  These factors remain somewhat relevant.  Defendant's propensity to traffic and to commit violence have diminished over time.  However, he has continued in the criminal conduct of illegal drug use.  Given his history, additional supervision and treatment cannot be expected to produce significant change.  It is up to Defendant to find a way to live without chemical dependency.  His drug use places in jeopardy all the good things in his life.  Incarceration is needed to address the abuse of the Court's trust, but further supervision is not justifiable on this record.

Another factor focuses on opportunities for education and treatment.  Defendant has availed himself of treatment opportunities in the past.  But both sides agree that he is past the point where further government-provided treatment can be expected to produce lasting change.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender.  The particular conduct is an important but secondary issue.  *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.").  The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's

breach of trust and the other statutory goals imported into section 3583(e). This is Defendant's third revocation. Another aggravating factor is how he hid from law enforcement. However, his family and employer vouch for his character. As he approaches sixty years old, he poses less of a danger to society. Unlike last year, when he denied his drug use, Defendant now freely admitted his use of Percocet. His admission to use of Percocet (after testing positive for fentanyl) effectively doubled the number of violations he was charged with. And, despite his long history of violations, the Court credits this admission and relies upon it to stay within the Range. Imprisonment at the top of the Range is an increase from last year's revocation sentence, but not an unwarranted one.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence.

For the reasons discussed herein, the Court finds that twelve months of imprisonment is sufficient, but not greater than necessary, to address the pertinent penalty factors.

## VI.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of all four violations.
2. Revocation with a term of imprisonment of twelve months, with no additional supervision to follow.
3. That, as requested, Defendant be housed at FCI Manchester.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for

consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 16th day of August, 2024.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge